

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00202-CV

IN THE INTEREST OF K.M.E., A CHILD

On Appeal from County Court No. 2
Randall County, Texas
Trial Court No. 82152-L2, Honorable Matthew C. Martindale, Presiding

November 19, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, C.T. (Mother), appeals from an order terminating her parental rights to her daughter, K.M.E.[1]  Appellee is the Texas Department of Family and Protective Services.  Via a single issue, Mother challenges whether sufficient evidence supports the trial court's finding that termination of parental rights is in K.M.E.'s best interest.  We affirm.

---

[1] To protect K.M.E.'s privacy, we will refer to C.T. as "Mother," and the child by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).  The parental rights of K.M.E.'s father, K.E., were previously terminated in the same proceeding but he did not appeal the final order.

**Background**

Before turning to the relevant facts, we address the state of our record. Evidence in this case was initially heard before an associate judge, who signed an order terminating Mother's parental rights. Mother sought de novo review before the referring court. At a hearing in May 2024, the referring court received no new evidence, stating it had reviewed the evidence from the associate judge's hearing. *See* TEX. FAM. CODE ANN. § 201.015(c) (authorizing referring court to consider associate judge's record). No party objected to this procedure. Because both court and counsel relied on the final hearing record during the de novo proceeding and on appeal, we conclude this evidence was constructively admitted. *See C.G. v. Tex. Dep't of Family & Prot. Servs.,* No. 03-22-00019-CV, 2022 Tex. App. LEXIS 3885, at *11–13 (Tex. App.—Austin June 9, 2022, pet. denied) (mem. op.); *In re J.R.,* No. 07-18-00240-CV, 2018 Tex. App. LEXIS 7862, at *9 (Tex. App.—Amarillo Sept. 26, 2018, pet. denied) (mem. op.) (concluding "evidence that is not formally admitted at trial but nonetheless treated by the trial court and parties as if it were is, for all practical purposes, admitted." (cleaned up)).

This case began with a medical crisis. Hours after K.M.E.'s birth in October K.M.E. began suffering withdrawal symptoms; doctors placed her in the neonatal intensive care unit for critical treatment. Despite medical advice that the infant required hospitalization during this period of withdrawal, Mother and the child's father attempted to remove her. The Department intervened, taking custody of K.M.E. and initiating termination proceedings.

Mother's service plan required maintaining a drug-free lifestyle. Though Mother tested negative several times in late 2022 and 2023, she tested positive for methamphetamine in October 2022, May 2023, June 2023, August 2023, and before trial in March 2024.[2] The March test came after Mother had missed seven required screenings over four months, including tests specifically ordered by the associate judge. Department policy treats these missed tests as presumptively positive.

For the Department, this pattern of drug use and evidence of missed testing appointments raised serious concerns about Mother's ability to care for K.M.E., a toddler who would be dependent on her care if allowed to return. As the Department's caseworker testified, ongoing drug use would impair Mother's ability to safely supervise her child, creating continuing danger to K.M.E.'s physical and mental well-being.

Mother's compliance with other service plan requirements was mixed. Mother attended most scheduled visitations with the child. Though she completed parenting classes, domestic violence counseling, and psychological assessments, she struggled to maintain stable housing and employment. During the eighteen-month case, Mother moved multiple times—from Father's home to domestic violence shelters in Amarillo and Dumas, then to an acquaintance's home, and finally to a 500-square-foot efficiency apartment in February 2024. According to the Department, Mother failed to show six months of stable housing as required under the plan.

---

[2] The record contains some contrary evidence regarding drug use, however. Mother's counselor at Daily Referral Services, Gage Paulk, testified that Mother tested negative for drugs three times between August and October 2023. These were simple urinalysis tests rather than laboratory screenings and did not include the period between November 2023 and trial in March 2024. Paulk described Mother as diligent in attending sessions, completing homework, and developing a relapse prevention plan.

Mother's employment history showed similar instability. Initially unable to work due to medical issues, Mother later found work at a laundry. She lost that position in fall 2023 but was rehired a few months later. Though she was employed at the time of trial, she did not provide proof of income to the Department.

Department caseworker Payton Sim testified that K.M.E. has remained in the same foster home since her removal, where she has thrived. She is meeting developmental milestones and has overcome her early medical challenges. The Department initially sought adoption either by K.M.E.'s foster parents or her maternal grandmother,[3] though the Department later ruled out the grandmother after conducting a home study.

## Analysis

Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights served K.M.E.'s best interest. The applicable standards for reviewing the evidence are discussed in our opinion in *In re A.M.,* No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.). As factfinder, the referring court was the exclusive judge of the credibility of the witnesses and the weight given their testimony. *In re H.E.B.,* No. 07-17-00351-CV, 2018 Tex. App. LEXIS 885, at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem. op.).

---

[3] Mother testified that allowing the child to reside with the grandmother would be a better placement than living with Mother. This may have been due to Mother's work responsibilities, which alternated between daytime and nighttime shifts.

4

Courts frequently consider the factors announced in *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976), when evaluating a child's best interest.[4] Not all factors need support a termination finding, however. *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2005) ("The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."). Unchallenged evidence supporting the predicate ground findings for termination can support the trial court's best-interest finding. *In re M.D.,* No. 07-21-00149-CV, 2021 Tex. App. LEXIS 7217, at *1–2 (Tex. App.—Amarillo Aug. 30, 2021, pet. denied) (per curiam, mem. op.); *see also In re T.C.,* No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.) (noting that a parent who opts to forgo a challenge to predicate ground findings tacitly concedes that sufficient evidence supports those findings). We have held that evidence of ongoing parental drug use is particularly significant because past conduct is often prologue. *In re A.M.,* Nos. 07-18-00047-CV, 07-18-00048-CV, 2018 Tex. App. LEXIS 3688, at *7 (Tex. App.—Amarillo May 23, 2018, pet. denied) (per curiam, mem. op.).

Mother's drug use throughout this case supports the best interest finding. Her prenatal methamphetamine use caused K.M.E.'s withdrawal symptoms. Despite

---

[4] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371–72.

treatment, she tested positive five more times during the case, including just before trial. Her seven missed drug tests permit an inference that she was avoiding detection of continued drug use. *See In re A.M.L.,* No. 04-19-00422-CV, 2019 Tex. App. LEXIS 10703, at *9 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.).

Though Mother completed other service requirements, she continued using methamphetamine even while she knew her parental rights hung in the balance. This "indicates an inability or unwillingness to prioritize the burdens and responsibilities of parenthood ahead of the desire for intoxication, an impaired condition that is not compatible with the care of a very young child like this one." *In re A.J.D.-J.*, 667 S.W.3d 813, 825 (Tex. App.—Houston [1st Dist.] 2023, no pet.). Mother's drug use impacts multiple *Holley* factors, particularly given K.M.E.'s complete dependence on her caregiver.[5] *See In re O.J.C.,* No. 04-23-00126-CV, 2023 Tex. App. LEXIS 5944, at *7–8 (Tex. App.—San Antonio Aug. 9, 2023, pet. denied) (mem. op.).

Meanwhile, K.M.E. has thrived in her foster placement, meeting developmental milestones and overcoming her early medical challenges. The Department's plans for adoption offer K.M.E. the permanence she needs. Considering the evidence holistically, we conclude the evidence was factually sufficient to support the best-interest finding. As such, it was legally sufficient as well. *See In re A.J.R.*, No. 03-19-00661-CV, 2020 Tex. App. LEXIS 2090, at *23 (Tex. App.—Austin Mar. 12, 2020, no pet.) (mem. op.).

---

[5] Illegal drug use implicates several *Holley* factors, including the child's present and future emotional and physical needs, present and future emotional and physical dangers, as well as Mother's parental abilities, home stability, and suggests acts or omissions which may indicate an improper parent-child relationship. *See In re P.W.,* No. 10-22-00259-CV, 2023 Tex. App. LEXIS 32, at *8 (Tex. App.—Waco Jan. 4, 2023, pet. denied) (mem. op.).

## Conclusion

Having overruled Mother's issue on appeal, we affirm the final order of the trial court.

Lawrence M. Doss
Justice